**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRENT WALTERS, SCOTT LOSEE, TAHJ ROBERTS, and BRAXTON CLEMONS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>BAILLIE LUMBER CO., L.P.,<br><br>Defendant. | **Case No. 1:25-cv-00728-LJV**<br><br>**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Representative Plaintiffs allege as follows:

## INTRODUCTION

1. Representative Plaintiffs Scott Losee, Brent Walters, Tahj Roberts, and Braxton Clemons ("Representative Plaintiffs") bring this Class Action Complaint against Defendant Baillie Lumber Co., L.P. ("Defendant" or "Baillie") for its failure to properly secure and safeguard Representative Plaintiffs and Class Members' personally identifiable information stored within Defendant's information network, including, without limitation, full names and Social Security numbers (these types of information, *inter alia*, being thereafter referred to, collectively, as "personally identifiable information" or "PII") as well as driver's license numbers, medical information, and health insurance information ("PHI").[1]

[1] Personally identifiable information ("PII") generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on its face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers, etc.).

2. With this action, Representative Plaintiffs seek to hold Defendant responsible for the harms it caused and will continue to cause Representative Plaintiffs and, at least, thousands of other similarly situated persons in the massive and preventable cyberattack purportedly discovered by Defendant on February 11, 2025, in which cybercriminals infiltrated Defendant's inadequately protected network servers and accessed highly sensitive PII and PHI that was being kept unprotected ("Data Breach").

3. While Defendant claims to have discovered the breach as early as February 2025, Defendant did not inform victims of the Data Breach until July 31, 2025. Indeed, Representative Plaintiffs and Class Members were wholly unaware of the Data Breach until they received letters from Defendant informing them of it.

4. Defendant acquired, collected, and stored Representative Plaintiffs' and Class Members' PII. Therefore, at all relevant times, Defendant knew or should have known that Representative Plaintiffs and Class Members would use Defendant's services to store and/or share sensitive data, including highly confidential PII and PHI.

5. By obtaining, collecting, using, and deriving a benefit from Representative Plaintiffs' and Class Members' PII and PHI, Defendant assumed legal and equitable duties to those individuals. These duties arise from state and federal statutes and regulations, and common law principles.

6. Defendant disregarded the rights of Representative Plaintiffs and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement adequate and reasonable measures to ensure that Representative Plaintiffs' and Class Members' PII and PHI was safeguarded, failing to take available steps to prevent unauthorized disclosure of data and failing to follow applicable, required and appropriate protocols, policies, and procedures regarding

the encryption of data, even for internal use. As a result, Representative Plaintiffs' and Class Members' PII and PHI was compromised through disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party seeking to profit off this disclosure by defrauding Representative Plaintiffs and Class Members in the future. Representative Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe and are entitled to injunctive and other equitable relief.

## JURISDICTION AND VENUE

7. Jurisdiction is proper in this Court under 28 U.S.C. § 1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Defendant.

8. Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. § 1367.

9. Defendant is headquartered and/or routinely conducts business in the State where this District is located, has sufficient minimum contacts in this State, has intentionally availed itself of this jurisdiction by marketing and/or selling products and/or services and/or by accepting and processing payments for those products and/or services within this State.

10. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Representative Plaintiffs' claims took place within this District and Defendant is headquartered and/or does business in this Judicial District.

## REPRESENTATIVE PLAINTIFF LOSEE'S EXPERIENCE

11. Defendant received highly sensitive PII and PHI from Representative Plaintiff Losee in connection with Representative Plaintiff's employment with Defendant. As a result, Representative Plaintiff Losee's information was among the data an unauthorized third party accessed in the Data Breach.

12. Representative Plaintiff Losee, an adult individual and, at all times relevant herein, a resident and citizen of the State of Ohio, was and is very careful about sharing his PII and PHI. Representative Plaintiff Losee has never knowingly transmitted unencrypted sensitive PII and PHI over the internet or any other unsecured source.

13. Representative Plaintiff Losee stored any documents containing his PII and PHI in a safe and secure location or destroyed the documents. Moreover, Representative Plaintiff Losee diligently chose unique usernames and passwords for his various online accounts.

14. Representative Plaintiff Losee took reasonable steps to maintain the confidentiality of his PII and PHI and relied on Defendant to keep his PII and PHI confidential and securely maintained, to use this information for employment purposes only, and to make only authorized disclosures of this information.

15. The Notice from Defendant notified Representative Plaintiff Losee that Defendant's network had been accessed and that Representative Plaintiff Losee's PII and PHI may have been involved in the Data Breach.

16. Furthermore, Defendant's Notice directed Representative Plaintiff Losee to be vigilant and to take certain steps to protect his PII and PHI and otherwise mitigate his damages.

17. As a result of the Data Breach, Plaintiff Losee heeded Defendant's warnings and spent time dealing with the consequences of the Data Breach, which included time spent verifying

the legitimacy of the Notice and self-monitoring his accounts and credit reports to ensure no fraudulent activity had occurred. This time has been lost forever and cannot be recaptured.

18. Representative Plaintiff Losee suffered actual injury in the form of a substantial drop in credit score in the months following the Data Breach.

19. Representative Plaintiff Losee suffered further actual injury in the form of damages to and diminution in the value of Representative Plaintiff's PII and PHI—a form of intangible property that Representative Plaintiff Losee entrusted to Defendant, which was compromised in and because of the Data Breach.

20. Representative Plaintiff Losee suffered lost time, annoyance, interference, and inconvenience because of the Data Breach and have anxiety and increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using, and selling Representative Plaintiff Losee's PII and PHI.

21. Representative Plaintiff Losee suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII and PHI, in combination with his name, being placed in the hands of unauthorized third parties/criminals.

22. Representative Plaintiff Losee has a continuing interest in ensuring that Representative Plaintiffs' PII and PHI, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

23. As a result, Representative Plaintiff Losee's information was among the data an unauthorized third party accessed in the Data Breach.

24. Representative Plaintiff Losee monitors his credit and identity for fraudulent activity regularly since the Breach.

25. Representative Plaintiff Losee is made uncomfortable because his personal information is on the dark web.

**REPRESENTATIVE PLAINTIFF WALTERS' EXPERIENCE**

26. Defendant received highly sensitive PII and PHI from Representative Plaintiff Walters in connection with Representative Plaintiff Walters' employment with Defendant. As a result, Representative Plaintiff Walters' information was among the data an unauthorized third party accessed in the Data Breach.

27. Representative Plaintiff Walters, an adult individual and, at all times relevant herein, a resident and citizen of the State of Indiana, was and is very careful about sharing his PII and PHI. Representative Plaintiff Walters has never knowingly transmitted unencrypted sensitive PII and PHI over the internet or any other unsecured source.

28. Representative Plaintiff Walters stored any documents containing his PII and PHI in a safe and secure location or destroyed the documents. Moreover, Representative Plaintiff Walters diligently chose unique usernames and passwords for his various online accounts.

29. Representative Plaintiff Walters took reasonable steps to maintain the confidentiality of his PII and PHI and relied on Defendant to keep his PII and PHI confidential and securely maintained, to use this information for employment purposes only, and to make only authorized disclosures of this information.

30. The Notice from Defendant notified Representative Plaintiff Walters that Defendant's network had been accessed and that Representative Plaintiff Walters' PII and PHI may have been involved in the Data Breach.

31. Furthermore, Defendant's Notice directed Representative Plaintiff Walters to be vigilant and to take certain steps to protect his PII and PHI and otherwise mitigate his damages.

32. Representative Plaintiff Walters suffered actual injury in the form of damages to and diminution in the value of Representative Plaintiff Walters' PII and PHI—a form of intangible property that Representative Plaintiff Walters entrusted to Defendant, which was compromised in and because of the Data Breach.

33. Representative Plaintiff Walters suffered lost time, annoyance, interference, and inconvenience because of the Data Breach and have anxiety and increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using, and selling Representative Plaintiff Walters' PII and PHI.

34. Representative Plaintiff Walters suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII and PHI, in combination with his name, being placed in the hands of unauthorized third parties/criminals.

35. Representative Plaintiff Walters has a continuing interest in ensuring that Representative Plaintiffs' PII and PHI, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

36. As a result, Representative Plaintiff Walters' information was among the data an unauthorized third party accessed in the Data Breach.

**REPRESENTATIVE PLAINTIFF ROBERTS' EXPERIENCE**

37. Defendant received highly sensitive PII and PHI from Representative Plaintiff Roberts. As a result, Representative Plaintiff Robert' information was among the data an unauthorized third party accessed in the Data Breach.

38. Representative Plaintiff Roberts, an adult individual and, at all times relevant herein, a resident and citizen of the State of Florida, was and is very careful about sharing his PII

and PHI. Representative Plaintiff Roberts has never knowingly transmitted unencrypted sensitive PII and PHI over the internet or any other unsecured source.

39. Representative Plaintiff Roberts stored any documents containing his PII and PHI in a safe and secure location or destroyed the documents. Moreover, Representative Plaintiff Roberts diligently chose unique usernames and passwords for his various online accounts.

40. Representative Plaintiff Roberts took reasonable steps to maintain the confidentiality of his PII and PHI and relied on Defendant to keep his PII and PHI confidential and securely maintained, to use this information for employment purposes only, and to make only authorized disclosures of this information.

41. The Notice from Defendant notified Representative Plaintiff Roberts that Defendant's network had been accessed and that Representative Plaintiff Roberts' PII and PHI may have been involved in the Data Breach.

42. Furthermore, Defendant's Notice directed Representative Plaintiff Roberts to be vigilant and to take certain steps to protect his PII and PHI and otherwise mitigate his damages.

43. As a result of the Data Breach, Representative Plaintiff Roberts heeded Defendant's warnings and spent time dealing with the consequences of the Data Breach, which included time spent verifying the legitimacy of the Notice and self-monitoring his accounts and credit reports to ensure no fraudulent activity had occurred. This time has been lost forever and cannot be recaptured.

44. Representative Plaintiff Roberts suffered additional actual injury in the form of a substantial drop in credit score in the months following the Data Breach.

45. Representative Plaintiff Roberts suffered additional actual injuries, including fraudulent charges to his bank accounts, unauthorized activity on his credit cards, an unauthorized

attempt to obtain a thirty-five-thousand-dollar ($35,000) loan in his name, and a notification from Credit Karma indicating that his personal information had been discovered on the dark web following the Data Breach.

46. Representative Plaintiff Roberts suffered further actual injury in the form of damages to and diminution in the value of Representative Plaintiff Roberts' PII and PHI—a form of intangible property that Representative Plaintiff Roberts entrusted to Defendant, which was compromised in and because of the Data Breach.

47. Representative Plaintiff Roberts suffered lost time, annoyance, interference, and inconvenience because of the Data Breach and have anxiety and increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals threatening him, accessing, using, and selling Representative Plaintiff Roberts' PII and PHI.

48. Representative Plaintiff Roberts suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII and PHI, in combination with his name, being placed in the hands of unauthorized third parties/criminals.

49. Representative Plaintiff Roberts has a continuing interest in ensuring that Representative Plaintiffs' PII and PHI, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

50. As a result, Representative Plaintiff Roberts' information was among the data an unauthorized third party accessed in the Data Breach.

51. Representative Plaintiff Roberts monitors his credit and identity for fraudulent activity regularly since the Breach.

52. Representative Plaintiff Roberts is made uncomfortable because his personal information is on the dark web.

**REPRESENTATIVE PLAINTIFF CLEMONS' EXPERIENCE**

53. Defendant received highly sensitive PII and PHI from Representative Plaintiff Clemons because Defendant required such to employ Plaintiff Clemons. Plaintiff Clemons was required to and did provide Defendant with his name, Social Security Number, date of birth, contact information, previous employment history, financial account information, health insurance information and his driver's license. As a result, Representative Plaintiff Clemons' information was among the data an unauthorized third party accessed in the Data Breach.

54. Representative Plaintiff Clemons, an adult individual and, at all times relevant herein, a resident and citizen of the State of Kentucky, was and is very careful about sharing his PII and PHI. Representative Plaintiff Clemons has never knowingly transmitted unencrypted sensitive PII and PHI over the internet or any other unsecured source.

55. Representative Plaintiff Clemons stored any documents containing his PII and PHI in a safe and secure location or destroyed the documents. Moreover, Representative Plaintiff Clemons diligently chose unique usernames and passwords for his various online accounts.

56. Representative Plaintiff Clemons took reasonable steps to maintain the confidentiality of his PII and PHI and relied on Defendant to keep his PII and PHI confidential and securely maintained, to use this information for employment purposes only, and to make only authorized disclosures of this information.

57. The Notice from Defendant notified Representative Plaintiff Clemons that Defendant's network had been accessed and an unauthorized actor gained access to Private Information, including Plaintiff Clemon's sensitive data and Social Security Number. The letter

did not inform Plaintiff Clemons that a criminal organization had access to his data, or whether Defendant paid the presupposed ransom to retrieve the data from the threat actor. Plaintiff Clemons could not have properly assessed the threats to his Private Information based on Defendant's deficient notice. Given the breached data was in the hands of criminals whose modus operandi is to post the data on the dark web,[2] Plaintiff Clemons fears the threat to his identity will continue for years to come.

58. Furthermore, Defendant's Notice directed Representative Plaintiff Clemons to be vigilant and to take certain steps to protect his PII and PHI and otherwise mitigate his damages.

59. As a result of the Data Breach, Representative Plaintiff Clemons heeded Defendant's warnings and spent time dealing with the consequences of the Data Breach, which included time spent verifying the legitimacy of the Notice and self-monitoring his accounts and credit reports to ensure no fraudulent activity had occurred. This time has been lost forever and cannot be recaptured.

60. Representative Plaintiff Clemons suffered further actual injury in the form of damages to and diminution in the value of Representative Plaintiff Clemons' PII and PHI—a form of intangible property that Representative Plaintiff Clemons entrusted to Defendant, which was compromised in and because of the Data Breach.

61. Representative Plaintiff Clemons suffered lost time, annoyance, interference, and inconvenience because of the Data Breach and have anxiety and increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals threatening him, accessing, using, and selling Representative Plaintiff Clemons' PII and PHI.

---

[2] https://blog.barracuda.com/2024/03/20/who-is-behind-cactus-ransomware (last viewed November 6, 2025).

62. Representative Plaintiff Clemons suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII and PHI, in combination with his name, being placed in the hands of unauthorized third parties/criminals.

63. Representative Plaintiff Clemons has a continuing interest in ensuring that Representative Plaintiffs' PII and PHI, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

64. As a result, Representative Plaintiff Clemons' information was among the data an unauthorized third party accessed in the Data Breach.

65. Representative Plaintiff Clemons monitors his credit and identity for fraudulent activity regularly since the Breach.

66. Representative Plaintiff Clemons is made uncomfortable because his personal information is on the dark web.

## DEFENDANT

67. Defendant is a New York corporation with a principal place of business located at 4002 Legion Drive, Hamburg, New York 14075.

68. Defendant is a manufacturer and distributor of hardwood lumber.

69. The true names and capacities of persons or entities, whether individual, corporate, associate or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Representative Plaintiffs. Representative Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of such responsible parties when their identities become known.

## CLASS ACTION ALLEGATIONS

70. Representative Plaintiffs bring this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure ("F.R.C.P.") on behalf of Representative Plaintiffs and the following classes/subclass(es) (collectively, the "Class(es)"):

> **Nationwide Class:**
> "All individuals within the United States of America whose PII and/or PHI was exposed to unauthorized third parties as a result of the data breach discovered by Defendant on February 11, 2025."

71. Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors and any entity in which Defendant has a controlling interest, all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsel, and/or subdivisions, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

72. In the alternative, Representative Plaintiffs request additional subclasses as necessary based on the types of PII and PHI that were compromised.

73. Representative Plaintiffs reserve the right to amend the above Class definitions or to propose other subclasses in subsequent pleadings and motions for class certification.

74. This action has been brought and may properly be maintained as a class action under F.R.C.P. Rule 23 because there is a well-defined community of interest in the litigation and membership of the proposed Classes is readily ascertainable.

a. Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiffs Classes are so numerous that joinder of all members is impractical, if not impossible. Representative Plaintiffs are informed and believe and, on that basis, allege that the total number

of Class Members is in the thousands of individuals. Membership in the Classes will be determined by analysis of Defendant's records.

b. Commonality: Representative Plaintiffs and the Class Members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

1) Whether Defendant had a legal duty to Representative Plaintiffs and the Classes to exercise due care in collecting, storing, using and/or safeguarding their PII and PHI;

2) Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

3) Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

4) Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

5) Whether Defendant failed to comply with its own policies and applicable laws, regulations and industry standards relating to data security;

6) Whether Defendant adequately, promptly and accurately informed Representative Plaintiffs and Class Members that their PII and PHI had been compromised;

7) How and when Defendant actually learned of the Data Breach;

8) Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PII and PHI of Representative Plaintiffs and Class Members;

9) Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

10) Whether Defendant engaged in unfair, unlawful or deceptive practices by failing to safeguard Representative Plaintiffs' and Class Members' PII and PHI;

11) Whether Representative Plaintiffs and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendant's wrongful conduct;

12) Whether Representative Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

c. Typicality: Representative Plaintiffs' claims are typical of the claims of the Plaintiffs Classes. Representative Plaintiffs and all members of the Plaintiffs Classes sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

d. Adequacy of Representation: Representative Plaintiffs in this class action are adequate representatives of each of the Plaintiffs Classes in that Representative Plaintiffs have the same interest in the litigation of this case as the Class Members, are committed to the vigorous prosecution of this case and have retained competent counsel who are experienced in conducting litigation of this nature. Representative Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to other Class Members or the classes in their entirety. Representative Plaintiffs anticipate no management difficulties in this litigation.

e. Superiority of Class Action: The damages suffered by individual Class Members are significant but may be small relative to each member's enormous expense of individual litigation. This makes or may make it impractical for members of the Plaintiffs Class to seek redress individually for the wrongful conduct alleged herein. Even if Class Members could afford such individual litigation, the court system could not. Should separate actions be brought or be required to be brought by each individual member of the Plaintiffs Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately. Individualized litigation increases the delay and expense to all parties and to the court system, presented by the case's complex legal and factual issues. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court.

75. Class certification is proper because the questions raised by this Complaint are of common or general interest affecting numerous persons, so it is impracticable to bring all Class Members before the Court.

76. This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate concerning the Classes in their entireties. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly.

Representative Plaintiffs' challenge of these policies and procedures hinges on Defendant's conduct concerning the Classes in their entirety, not on facts or law applicable only to Representative Plaintiffs.

77. Unless a Class-wide injunction is issued, Defendant may continue failing to secure Class Members' PII and PHI properly, and Defendant may continue to act unlawfully, as set forth in this Complaint.

78. Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under F.R.C.P. Rule 23(b)(2).

## COMMON FACTUAL ALLEGATIONS

79. On Feb. 11, 2025, Baillie Lumber Co. discovered suspicious activity within its network. An investigation revealed that an unauthorized actor had accessed certain files between Feb. 6 and Feb. 12, 2025, and may have copied them.

80. This breach was later attributed to the Cactus ransomware group, which claimed responsibility and posted about the attack on its dark web portal on March 12, 2025. The group asserted it had obtained 52 GB of data, including personal identifiable information, corporate confidential documents, financial data, payroll, legal documents, HR department files, employee and executive personal documents, and corporate correspondence.

81. After a detailed review, Baillie finalized its assessment on July 1, 2025, confirming that information related to certain individuals was affected. According to regulatory filings, the exposed data included names and Social Security numbers (PII), as well as driver's license numbers, medical information, and health insurance information (PHI).

82. The breach impacted at least 595 individuals in Texas, four in Maine, and 42 in New Hampshire.

83. The incident was reported to the Maine Attorney General on July 31, 2025, to the Texas Attorney General on Aug. 1, 2025, and on July 31st to the New Hampshire Attorney General and Massachusetts Attorney General.

84. Notifications to affected individuals were sent via U.S. Mail on July 31, 2025.

**Defendant's Failed Response to the Data Breach**

85. Not until months after it claims to have discovered the Data Breach did Defendant begin sending the Notice to persons whose PII and PHI Defendant confirmed was potentially compromised because of the Data Breach. The Notice provided basic details of the Data Breach and Defendant's recommended next steps.

86. Upon information and belief, the unauthorized third-party cybercriminals gained access to Representative Plaintiffs' and Class Members' PII and PHI with the intent of misusing the PII and PHI, including marketing and selling Representative Plaintiffs' and Class Members' PII and PHI.

87. Defendant had and continues to have obligations created by applicable federal and state law as set forth herein, reasonable industry standards, common law, and its own assurances and representations to keep Representative Plaintiffs' and Class Members' PII and PHI confidential and to protect such PII and PHI from unauthorized access.

88. Defendant created, collected, and stored Representative Plaintiffs' and Class Members' PII and PHI with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

89. Despite this, even today, Representative Plaintiffs and Class Members remain in the dark regarding what data was stolen, the particular malware used, and what steps are being taken to secure their PII and PHI in the future. Thus, Representative Plaintiffs and Class Members are left to speculate as to where their PII and PHI ended up, who has used it, and for what potentially nefarious purposes. Indeed, they are left to further speculate as to the full impact of the Data Breach and how Defendant intends to enhance its information security systems and monitoring capabilities to prevent further breaches.

90. Representative Plaintiffs' and Class Members' PII and PHI may end up for sale on the dark web or fall into the hands of companies that will use the detailed PII and PHI for targeted marketing without Representative Plaintiffs' and/or Class Members' approval. Either way, unauthorized individuals can now easily access Representative Plaintiffs' and Class Members' PII and PHI.

**Defendant Collected/Stored Representative Plaintiffs' and Class Members' PII and PHI**

91. Defendant acquired, collected, stored, and assured reasonable security over Representative Plaintiffs' and Class Members' PII and PHI.

92. As a condition of its relationships with Representative Plaintiffs and Class Members, Defendant required that Representative Plaintiffs and Class Members entrust Defendant with highly sensitive and confidential PII and PHI. Defendant, in turn, stored that information on Defendant's system that was ultimately affected by the Data Breach.

93. By obtaining, collecting, and storing Representative Plaintiffs' and Class Members' PII and PHI, Defendant assumed legal and equitable duties over the PII and PHI and knew or should have known that it was thereafter responsible for protecting Representative Plaintiffs' and Class Members' PII and PHI from unauthorized disclosure.

94. Representative Plaintiffs and Class Members have taken reasonable steps to maintain their PII's confidentiality. Representative Plaintiffs and Class Members relied on Defendant to keep their PII and PHI confidential and securely maintained, to use this information for business and healthcare purposes only, and to make only authorized disclosures of this information.

95. Defendant could have prevented the Data Breach by properly securing and encrypting and/or more securely encrypting its servers, generally, as well as Representative Plaintiffs' and Class Members' PII and PHI.

96. Defendant's negligence in safeguarding Representative Plaintiffs' and Class Members' PII and PHI is exacerbated by repeated warnings and alerts directed at protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

97. Data breaches such as the one experienced by Defendant have become so notorious that the Federal Bureau of Investigation ("FBI") and the U.S. Secret Service have issued a warning to potential targets so they are aware of, can prepare for, and hopefully ward off a potential attack.

98. Due to the high-profile nature of these breaches and other breaches of its kind, Defendant was and/or certainly should have been on notice and aware of such attacks and, therefore, should have assumed and adequately performed the duty of preparing for such an imminent attack.

99. And yet, despite the prevalence of public announcements of data breaches and data security compromises, Defendant failed to take appropriate steps to protect Representative Plaintiffs' and Class Members' PII and PHI from being compromised.

**Defendant Had a Duty to Protect the Stolen Information**

100. In failing to adequately secure Representative Plaintiffs' and Class Members' sensitive data, Defendant breached duties it owed Representative Plaintiffs and Class Members under statutory and common law. Moreover, Representative Plaintiffs and Class Members surrendered their highly sensitive personal data to Defendant under the implied condition that Defendant would keep it private and secure. Accordingly, Defendant also had an implied duty to safeguard their data, independent of any statute.

101. Defendant was also prohibited by the FTC Act (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce. The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp*., 799 F.3d 236 (3d Cir. 2015).

102. According to the FTC, the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

103. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that companies should:

a. protect the sensitive consumer information that they keep;

b. properly dispose of PII that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

104. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

105. The FTC recommends that companies not maintain information longer than is necessary for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor for suspicious activity on the network and verify that third-party service providers have implemented reasonable security measures.

106. The FTC has brought enforcement actions against businesses for failing to protect consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

107. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

108. In addition to its obligations under federal and state laws, Defendant owed a duty to Representative Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII and PHI in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Representative Plaintiffs and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems,

networks, and protocols adequately protected Representative Plaintiffs' and Class Members' PII and PHI.

109. Defendant owed a duty to Representative Plaintiffs and Class Members to design, maintain, and test its computer systems, servers, and networks to ensure that all PII and PHI in its possession was adequately secured and protected.

110. Defendant owed a duty to Representative Plaintiffs and Class Members to create and implement reasonable data security practices and procedures to protect all PII and PHI in its possession, including not sharing information with other entities who maintain sub-standard data security systems.

111. Defendant owed a duty to Representative Plaintiffs and Class Members to implement processes that would immediately detect a breach of its data security systems in a timely manner.

112. Defendant owed a duty to Representative Plaintiffs and Class Members to act upon data security warnings and alerts in a timely fashion.

113. Defendant owed a duty to Representative Plaintiffs and Class Members to disclose if its computer systems and data security practices were inadequate to safeguard individuals' PII and PHI from theft, because such an inadequacy would be a material fact in the decision to entrust this PII and PHI to Defendant.

114. Defendant owed a duty of care to Representative Plaintiffs and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

115. Defendant owed a duty to Representative Plaintiffs and Class Members to encrypt and/or more reliably encrypt Representative Plaintiffs' and Class Members' PII and PHI and monitor user behavior and activity to identify possible threats.

**The Sensitive Information Stolen in the Data Breach is Highly Valuable**

116. It is well known that PII and PHI, including Social Security numbers and health records in particular, are a valuable commodity and a frequent, intentional target of cybercriminals. Companies that collect such information, including Defendant, are well aware of the risk of being targeted by cybercriminals.

117. Individuals place a high value not only on their PII and PHI but also on the privacy of that data. Identity theft causes severe negative consequences to its victims, as well as severe distress and hours of lost time trying to fight the impact of identity theft.

118. While the greater efficiency of electronic health records translates to cost savings for providers, it also comes with the risk of privacy breaches. PII and PHI are a valuable commodity for which a "cyber black market" exists where criminals openly post stolen Social Security numbers and other personal information on several underground internet websites. Unsurprisingly, PHI is at particularly high risk and is acutely affected by cyberattacks, like the Data Breach here.

119. The high value of PII and PHI to criminals is evidenced by the prices they will pay for it through the dark web. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[3] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[4] Criminals can also purchase access to entire company data breaches from $999 to $4,995.[5]

---

[3] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed July 24, 2023).

[4] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed July 24, 2023).

[5] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed July 24, 2023).

120. Between 2005 and 2019, at least 249 million people were affected by healthcare data breaches.[6] Indeed, during 2019 alone, over 41 million healthcare records were exposed, stolen, or unlawfully disclosed in 505 data breaches.[7] In short, these sorts of data breaches are increasingly common.[8]

121. These criminal activities have and will result in devastating financial and personal losses to Representative Plaintiffs and Class Members. For example, it is believed that certain PII compromised in the 2017 Experian data breach was being used three years later by identity thieves to apply for COVID-19-related benefits in Oklahoma. Such fraud will be an omnipresent threat for Representative Plaintiffs and Class Members for the rest of their lives. They will need to remain constantly vigilant.

122. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government-issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

123. Identity thieves can use PII and PHI, such as that of Representative Plaintiffs and Class Members which Defendant failed to keep secure, to perpetrate various crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as

6 https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7349636/#B5-healthcare-08-00133/ (last accessed July 24, 2023).
7 https://www.hipaajournal.com/december-2019-healthcare-data-breach-report/ (last accessed July 24, 2023).
8 https://www.tenable.com/blog/healthcare-security-ransomware-plays-a-prominent-role-in-covid-19-era-breaches/ (last accessed July 24, 2023).

immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

124. The ramifications of Defendant's failure to secure Representative Plaintiffs' and Class Members' PII and PHI are long-lasting and severe. Once PII and PHI is stolen, particularly identification numbers, fraudulent use of that information and damage to victims may continue for years. Indeed, the PII and PHI of Representative Plaintiffs and Class Members was taken by hackers to engage in identity theft or to sell it to other criminals who will purchase the PII and PHI for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

125. Individuals, like Representative Plaintiffs and Class Members, are particularly concerned with protecting the privacy of their Social Security numbers, which are the key to stealing any person's identity and are likened to accessing DNA for hacker's purposes.

126. Data breach victims suffer long-term consequences when their Social Security numbers are taken and used by hackers. Even if they know their Social Security numbers are being misused, Representative Plaintiffs and Class Members cannot obtain new numbers unless they become victims of Social Security misuse.

127. The Social Security Administration has warned that "a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So, using a new number won't guarantee

you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same."[9]

128. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII and PHI is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[10]

129. The harm to Representative Plaintiffs and Class Members is especially acute given the nature of the leaked data. Medical identity theft is one of the most common, most expensive, and most difficult-to-prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," more than identity thefts involving banking and finance, the government, and the military or education.[11]

130. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[12]

---

[9] *Identity Theft and Your Social Security Number*, SSA, No. 05-10064 (July 2021), https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Apr. 18, 2023).

[10] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf (last accessed July 24, 2023).

[11] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/ (last accessed July 24, 2023).

[12] *Id*.

131. When cybercriminals access financial information, health insurance information, and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendant may have exposed Representative Plaintiffs and Class Members.

132. A study by Experian found that the average cost of medical identity theft is "about $20,000" per incident and that most victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive to restore coverage.[13] Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third of medical identity theft victims saw their insurance premiums rise, and 40 percent were never able to resolve their identity theft at all.[14]

133. And data breaches are preventable.[15] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[16] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised…."[17]

134. Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures. Appropriate information

---

13 See Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last accessed July 24, 2023).

14 Id.; see also Healthcare Data Breach: What to Know About them and What to Do After One, EXPERIAN, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last accessed July 24, 2023).

15 Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012)

16 *Id.* at 17.

17 *Id.* at 28.

security controls, including encryption, must be implemented and enforced rigorously and disciplined so that a *data breach never occurs*.[18]

135. Here, Defendant knew of the importance of safeguarding PII and PHI and of the foreseeable consequences that would occur if Representative Plaintiffs' and Class Members' PII and PHI was stolen, including the significant costs that would be placed on Representative Plaintiffs and Class Members because of a breach of this magnitude. As detailed above, Defendant knew or should have known that the development and use of such protocols was necessary to fulfill its statutory and common law duties to Representative Plaintiffs and Class Members. Therefore, its failure to do so is intentional, willful, reckless, and/or grossly negligent.

136. Furthermore, Defendant has offered only a limited two-year subscription for identity theft monitoring and identity theft protection through Kroll. Its limitation is inadequate when the victims will likely face many years of identity theft.

137. Moreover, Defendant's credit monitoring offer and advice to Representative Plaintiffs and Class Members squarely place the burden on Representative Plaintiffs and Class Members, rather than on Defendant, to monitor and report suspicious activities to law enforcement. In other words, Defendant expects Representative Plaintiffs and Class Members to protect themselves from its tortious acts resulting from the Data Breach. Rather than automatically enrolling Representative Plaintiffs and Class Members in credit monitoring services upon discovery of the Data Breach, Defendant merely sent instructions to Representative Plaintiffs and Class Members about actions they could affirmatively take to protect themselves.

138. These services are wholly inadequate as they fail to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing

---

[18] *Id.*

identity theft and financial fraud, and they entirely fail to provide any compensation for the unauthorized release and disclosure of Representative Plaintiffs' and Class Members' PII and PHI.

139. Defendant disregarded the rights of Representative Plaintiffs and Class Members by, *inter alia*: (i) intentionally, willfully, recklessly and/or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions, (ii) failing to disclose that it did not have adequate security protocols and training practices in place to safeguard Representative Plaintiffs' and Class Members' PII and PHI, (iii) failing to take standard and reasonably available steps to prevent the Data Breach, (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time, and (v) failing to provide Representative Plaintiffs and Class Members prompt and accurate notice of the Data Breach.

## CAUSES OF ACTION

### COUNT ONE
### Negligence
### (On behalf of the Nationwide Class)

140. Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

141. At all times herein relevant, Defendant owed Representative Plaintiffs and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their PII and PHI and to use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing Representative Plaintiffs' and Class Members' PII and PHI on its computer systems and networks.

142. Among these duties, Defendant was expected:

a. to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the PII and PHI in its possession;

b. to protect Representative Plaintiffs' and Class Members' PII and PHI using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

c. to implement processes to detect the Data Breach quickly and to act on warnings about data breaches timely; and

d. to promptly notify Representative Plaintiffs and Class Members of any data breach, security incident or intrusion that affected or may have affected their PII and PHI.

143. Defendant knew or should have known that the PII and PHI was private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care to not subject Representative Plaintiffs and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

144. Defendant knew or should have known of the risks inherent in collecting and storing PII and PHI, the vulnerabilities of its data security systems and the importance of adequate security. Defendant knew or should have known about numerous well-publicized data breaches.

145. Defendant knew or should have known that its data systems and networks did not adequately safeguard Representative Plaintiffs' and Class Members' PII and PHI.

146. Only Defendant was in the position to ensure that its systems and protocols were sufficient to protect the PII and PHI that Representative Plaintiffs and Class Members had entrusted to it.

147. Defendant breached its duties to Representative Plaintiffs and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their PII and PHI.

148. Because Defendant knew that a breach of its systems could damage numerous individuals, including Representative Plaintiffs and Class Members, Defendant had a duty to adequately protect its data systems and the PII and PHI stored thereon.

149. Representative Plaintiffs' and Class Members' willingness to entrust Defendant with their PII and PHI was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant could protect its systems and the PII and PHI it stored on them from attack. Thus, Defendant had a special relationship with Representative Plaintiffs and Class Members.

150. Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Representative Plaintiffs' and Class Members' PII and PHI and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Defendant, Representative Plaintiffs, and/or the remaining Class Members.

151. Defendant breached its general duty of care to Representative Plaintiffs and Class Members in, but not necessarily limited to, the following ways:

a. by failing to provide fair, reasonable and/or adequate computer systems and data security practices to safeguard Representative Plaintiffs' and Class Members' PII and PHI;

b. by failing to timely and accurately disclose that Representative Plaintiffs' and Class Members' PII and PHI had been improperly acquired or accessed;

c. by failing to adequately protect and safeguard PII and PHI by knowingly disregarding standard information security principles, despite obvious risks and by allowing unmonitored and unrestricted access to unsecured PII and PHI;

d. by failing to provide adequate supervision and oversight of the PII and PHI with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather Representative Plaintiffs' and Class Members' PII and PHI, misuse the PII and PHI, and intentionally disclose it to others without consent;

e. by failing to adequately train its employees not to store ger than absolutely necessary;

f. by failing to consistently enforce security policies aimed at protecting Representative Plaintiffs' and Class Members' PII and PHI;

g. by failing to implement processes to quickly detect data breaches, security incidents or intrusions; and

h. by failing to encrypt Representative Plaintiffs' and Class Members' PII and PHI and monitor user behavior and activity in order to identify possible threats.

152. Defendant's willful failure to abide by these duties was wrongful, reckless and/or grossly negligent in light of the foreseeable risks and known threats.

153. As a proximate and foreseeable result of Defendant's grossly negligent conduct, Representative Plaintiffs and Class Members have suffered damages and are at imminent risk of additional harm and damages (as alleged above).

154. The law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the PII and PHI to Representative Plaintiffs and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their PII and PHI.

155. Defendant breached its duty to notify Representative Plaintiffs and Class Members of the unauthorized access by waiting roughly four months after learning of the Data Breach to notify Representative Plaintiffs and Class Members and then by failing and continuing to fail to provide Representative Plaintiffs and Class Members sufficient information regarding the breach. To date, Defendant has not provided sufficient information to Representative Plaintiffs and Class Members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Representative Plaintiffs and Class Members.

156. Further, explicitly failing to provide timely and clear notification of the Data Breach to Representative Plaintiffs and Class Members, Defendant prevented Representative Plaintiffs and Class Members from taking meaningful, proactive steps to secure their PII and PHI.

157. There is a close causal connection between Defendant's failure to implement security measures to protect Representative Plaintiffs' and Class Members' PII and PHI and the harm (or risk of imminent harm suffered) by Representative Plaintiffs and Class Members.

Representative Plaintiffs' and Class Members' PII and PHI was accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII and PHI by adopting, implementing and maintaining appropriate security measures.

158. Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

159. The damages Representative Plaintiffs and Class Members have suffered (as alleged above) and will continue to suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

160. Additionally, 15 U.S.C. § 45 (FTC Act, Section 5) prohibits "unfair […] practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII and PHI. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

161. Defendant violated 15 U.S.C. § 45 by failing to use reasonable measures to protect PII and PHI and by not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained and stored and the foreseeable consequences of the immense damages that would result to Representative Plaintiffs and Class Members.

162. Defendant's violation of 15 U.S.C. § 45 constitutes negligence *per se*.

163. As a direct and proximate result of Defendant's negligence and negligence *per se*, Representative Plaintiffs and Class Members have suffered and will continue to suffer injury, including but not limited to: (i) actual identity theft, (ii) the loss of the opportunity of how their PII and PHI is used, (iii) the compromise, publication, and/or theft of their PII and PHI, (iv) out-

of-pocket expenses associated with the prevention, detection and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI, (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft, (vi) lost continuity in relation to their healthcare, (vii) the continued risk to their PII and PHI, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Representative Plaintiffs' and Class Members' PII and PHI in its continued possession, and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the lives of Representative Plaintiffs and Class Members.

164. As a direct and proximate result of Defendant's negligence and negligence *per se*, Representative Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including but not limited to anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

165. Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Representative Plaintiffs and Class Members have suffered and will continue to suffer the continued risks of exposure of their PII and PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII and PHI in its continued possession.

## COUNT TWO
## Negligence *Per Se*
## (On behalf of the Nationwide Class)

166. Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

167. Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 prohibits companies such as Defendant from "using any unfair method of competition or unfair or deceptive act or practice in or affecting commerce," including failing to use reasonable measures to protect PII and PHI. In addition to the FTC Act, the agency also enforces other federal laws relating to consumers' privacy and security. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

168. In addition to the FTC rules and regulations and state law, other states and jurisdictions where victims of the Data Breach are located require that Defendant protect PII and PHI from unauthorized access and disclosure and timely notify the victim of a data breach.

169. Defendant violated FTC rules and regulations obligating companies to use reasonable measures to protect PII and PHI by failing to comply with applicable industry standards and by unduly delaying reasonable notice of the actual breach. Defendant's conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained and stored and the foreseeable consequences of a Data Breach and the exposure of Representative Plaintiffs' and Class members' highly sensitive PII and PHI.

170. Each of Defendant's statutory violations of Section 5 of the FTC Act and other applicable statutes, rules and regulations, constitute negligence *per se*.

171. Representative Plaintiffs and Class Members are within the category of persons the FTC Act were intended to protect.

172. The harm that occurred because of the Data Breach described herein is the type of harm the FTC Act was intended to guard against.

173. As a direct and proximate result of Defendant's negligence *per se*, Representative Plaintiffs and Class Members have been damaged as described herein, continue to suffer injuries as detailed above, are subject to the continued risk of exposure of their PII and PHI in Defendant's possession and are entitled to damages in an amount to be proven at trial.

**COUNT THREE**
**Breach of Confidence**
**(On behalf of the Nationwide Class)**

174. Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

175. During Representative Plaintiffs' and Class Members' interactions with Defendant, Defendant was fully aware of the confidential nature of the PII and PHI that Representative Plaintiffs and Class Members provided to it.

176. As alleged herein and above, Defendant's relationship with Representative Plaintiffs and Class Members was governed by promises and expectations that Representative Plaintiffs and Class Members' PII and PHI would be collected, stored, and protected in confidence, and would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

177. Representative Plaintiffs and Class Members provided their respective PII and PHI to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the PII and PHI to be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

178. Representative Plaintiffs and Class Members also provided their PII and PHI to Defendant with the explicit and implicit understanding that Defendant would take precautions to protect their PII and PHI from unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing, such as following basic principles of protecting its networks and data systems.

179. Defendant voluntarily received, in confidence, Representative Plaintiffs' and Class Members' PII and PHI with the understanding that the PII and PHI would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by the public or any unauthorized third parties.

180. Due to Defendant's failure to prevent, detect and avoid the Data Breach from occurring by, *inter alia*, not following best information security practices to secure Representative Plaintiffs' and Class Members' PII and PHI, Representative Plaintiffs' and Class Members' PII and PHI was accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties beyond Representative Plaintiffs' and Class Members' confidence and without their express permission.

181. As a direct and proximate cause of Defendant's actions and/or omissions, Representative Plaintiffs and Class Members have suffered damages, as alleged herein.

182. But for Defendant's failure to maintain and protect Representative Plaintiffs' and Class Members' PII and PHI in violation of the parties' understanding of confidence, their PII and PHI would not have been accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties. The Data Breach was the direct and legal cause of the misuse of Representative Plaintiffs' and Class Members' PII and PHI and the resulting damages.

183. The injury and harm Representative Plaintiffs and Class Members suffered and will continue to suffer was the reasonably foreseeable result of Defendant's unauthorized misuse of Representative Plaintiffs' and Class Members' PII and PHI. Defendant knew its data systems and protocols for accepting and securing Representative Plaintiffs' and Class Members' PII and PHI had security and other vulnerabilities that placed Representative Plaintiffs' and Class Members' PII and PHI in jeopardy.

184. As a direct and proximate result of Defendant's breaches of confidence, Representative Plaintiffs and Class Members have suffered and will continue to suffer injury, as alleged herein, including but not limited to: (i) actual identity theft, (ii) the compromise, publication, and/or theft of their PII and PHI, (iii) out-of-pocket expenses associated with the prevention, detection and recovery from identity theft and/or unauthorized use of their PII and PHI, (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft, (v) the continued risk to their PII and PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Class Members' PII and PHI in its continued possession, (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Representative Plaintiffs and Class Members, (vii) the diminished value of Representative Plaintiffs' and Class Members' PII and PHI, and (viii) the diminished value of Defendant's services for which Representative Plaintiffs and Class Members paid and received.

**COUNT FOUR**
**Breach of Implied Contract**
**(On behalf of the Nationwide Class)**

185. Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

186. Through their course of conduct, Defendant, Representative Plaintiffs and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Representative Plaintiffs' and Class Members' PII and PHI.

187. Defendant required Representative Plaintiffs and Class Members to provide and entrust their PII and PHI as a condition of employment with Defendant and/or obtaining Defendant's services.

188. Defendant solicited and invited Representative Plaintiffs and Class Members to provide their PII and PHI as part of Defendant's regular business practices. Representative Plaintiffs and Class Members accepted Defendant's offers and provided their PII and PHI to Defendant.

189. As a condition of being Defendant's employees and/or customers, Representative Plaintiffs and Class Members provided and entrusted their PII and PHI to Defendant. In so doing, Representative Plaintiffs and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such non-public information, to keep such information secure and confidential and to timely and accurately notify Representative Plaintiffs and Class Members if their data had been breached and compromised or stolen.

190. A meeting of the minds occurred when Representative Plaintiffs and Class Members agreed to, and did, provide their PII and PHI to Defendant, in exchange for, amongst other things, the protection of their PII and PHI.

191. Representative Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendant.

192. Defendant breached the implied contracts it made with Representative Plaintiffs and Class Members by failing to safeguard and protect their PII and PHI and by failing to provide timely and accurate notice to them that their PII and PHI was compromised because of the Data Breach.

As a direct and proximate result of Defendant's above-described breach of implied contract, Representative Plaintiffs and Class Members have suffered and will continue to suffer: (i) ongoing, imminent and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (ii) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (iii) loss of the confidentiality of the stolen confidential data, (iv) the illegal sale of the compromised data on the dark web, (v) lost work time, and (vi) other economic and non-economic harm.

## COUNT FIVE
## Breach of the Implied Covenant of Good Faith and Fair Dealing
## (On behalf of the Nationwide Class)

193. Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

194. Every contract in this State (New York) and the States of any possible subclass have an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

195. Representative Plaintiffs and Class Members have complied with and performed all conditions of their contracts with Defendant.

196. Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PII and PHI, failing to timely and accurately disclose the Data Breach to Representative Plaintiffs and Class Members, and continued acceptance of PII and PHI and storage of other personal information after Defendant knew or should have known of the security vulnerabilities of the systems that were exploited in the Data Breach.

197. Defendant acted in bad faith and/or with malicious motive in denying Representative Plaintiffs and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

**COUNT SIX**
**Breach of Fiduciary Duty**
**(On behalf of the Nationwide Class)**

**198.** Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

**199.** In light of the special relationship between Defendant and Representative Plaintiffs and Class Members, whereby Defendant became the guardian of Representative Plaintiffs' and Class Members' PII and PHI, Defendant became a fiduciary by its undertaking and guardianship of the PII and PHI to act primarily for Representative Plaintiffs and Class Members, (i) for the safeguarding of Representative Plaintiffs' and Class Members' PII and PHI, (ii) to timely notify Representative Plaintiffs and Class Members of a data breach and disclosure, and (iii) to maintain complete and accurate records of what information (and where) Defendant did has and continues to store.

**200.** Defendant has a fiduciary duty to act for the benefit of Representative Plaintiffs and Class Members upon matters within the scope of its relationship with its employees and customers—in particular, to keep their PII and PHI secure.

**201.** Defendant breached its fiduciary duties to Representative Plaintiffs and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period of time.

**202.** Defendant breached its fiduciary duties to Representative Plaintiffs and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Representative Plaintiffs' and Class Members' PII and PHI.

**203.** Defendant breached its fiduciary duties to Representative Plaintiffs and Class Members by failing to timely notify and/or warn Representative Plaintiffs and Class Members of the Data Breach.

**204.** Defendant breached its fiduciary duties to Representative Plaintiffs and Class Members by otherwise failing to safeguard Representative Plaintiffs' and Class Members' PII and PHI.

**205.** As a direct and proximate result of Defendant's breaches of its fiduciary duties, Representative Plaintiffs and Class Members have suffered and will continue to suffer injury, including but not limited to: (i) actual identity theft, (ii) the compromise, publication, and/or theft of their PII and PHI, (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII and PHI, (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, contest, and recover from identity theft, (v) the continued risk to their PII and PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI in its continued possession, (vi) future costs in terms of time,

effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Representative Plaintiffs and Class Members, and (vii) the diminished value of Defendant's services they received.

**206.** As a direct and proximate result of Defendant's breach of its fiduciary duties, Representative Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

**<u>COUNT SEVEN</u>**
**Unjust Enrichment**
**(On behalf of the Nationwide Class)**

207. Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein. This Count is pled in the alternative to the Breach of Contract Count above.

208. Representative Plaintiffs and Class Members conferred a substantial benefit on Defendant by providing their valuable PII and PHI, which Defendant collected and used to administer its payroll, maintain compliance with employment laws, and support its profitable business operations.

209. Defendant benefitted by avoiding the cost of obtaining or maintaining that information through alternative means and by leveraging that information in connection with its workforce management.

210. Defendant retains this benefit in the form of continued possession and use of Representative Plaintiffs' and Class Members' PII and PHI for its business purposes, while having failed to expend the resources necessary to secure it. Defendant's ongoing use and retention of that data without adequate protection is inequitable and unjust.

211. Defendant was unjustly enriched by retaining the monetary value of the funds it would have expended on proper cybersecurity measures. Defendant knowingly allocated

insufficient resources toward data security, thereby increasing profits at the expense of Representative Plaintiffs and Class Members.

212. Defendant further enriched itself by saving the costs it reasonably should have expended in data-security measures to secure Representative Plaintiffs' and Class Members' PII and PHI. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profits at the expense of Representative Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. On the other hand, Representative Plaintiffs and Class Members suffered as a direct and proximate result of Defendant's decision to prioritize its profits over the requisite security.

213. To the extent any contract does not govern the subject matter of this dispute, equity requires Defendant to disgorge the benefit it obtained from Plaintiffs' provision of valuable PII and the cost savings realized through its failure to implement reasonable data security measures.

214. Defendant failed to secure Representative Plaintiffs' and Class Members' PII and PHI and, therefore, did not provide full compensation for the benefit of Representative Plaintiffs and Class Members.

215. Defendant acquired the PII and PHI through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

216. If Representative Plaintiffs and Class Members knew that Defendant had not reasonably secured their PII and PHI, they would not have agreed to provide their PII and PHI to Defendant.

217. Representative Plaintiffs and Class Members have no remedy at law.

218. As a direct and proximate result of Defendant's conduct, Representative Plaintiffs and Class Members have suffered and will continue to suffer injury, including but not limited to:

(i) actual identity theft, (ii) the loss of opportunity to determine how their PII and PHI is used, (iii) the compromise, publication, and/or theft of their PII, (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII and PHI, (v) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft, (vi) the continued risk to their PII and PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII and PHI in its continued possession, and (vii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the lives of Representative Plaintiffs and Class Members.

219. As a direct and proximate result of Defendant's conduct, Representative Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

220. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Representative Plaintiffs and Class Members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Representative Plaintiffs and Class Members overpaid for Defendant's services.

**COUNT EIGHT**
**Declaratory Judgment**
**(On behalf of the Nationwide Class)**

221. Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

222. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant

further necessary relief. Further, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

223. An actual controversy has arisen after the Data Breach regarding Representative Plaintiffs' and Class Members' PII and PHI and whether Defendant is currently maintaining data security measures adequate to protect Representative Plaintiffs and Class Members from further data breaches that compromise their PII and PHI. Representative Plaintiffs allege that Defendant's data security measures remain inadequate. Defendant publicly denies these allegations. Furthermore, Representative Plaintiffs continue to suffer injury due to the compromise of their PII and PHI and remain at imminent risk that further compromises of their PII and PHI will occur in the future. It is unknown what specific measures and changes Defendant has undertaken in response to the Data Breach.

224. Representative Plaintiffs and the Classes have an ongoing, actionable dispute arising out of Defendant's inadequate security measures, including: (i) Defendant's failure to encrypt Representative Plaintiffs' and Class Members' PII and PHI, including Social Security numbers, while storing it in an Internet-accessible environment, and (ii) Defendant's failure to delete PII and PHI it has no reasonable need to maintain in an Internet-accessible environment, including the Social Security numbers of Representative Plaintiffs.

225. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owes a legal duty to secure the PII and PHI of Representative Plaintiffs and Class Members;

b. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII;

c. Defendant's ongoing breaches of its legal duty continue to cause Representative Plaintiffs harm.

226. This Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law, industry, and government regulatory standards to protect consumers' PII. Specifically, this injunction should, among other things, direct Defendant to:

a. engage third-party auditors, consistent with industry standards, to test its systems for weakness and upgrade any such weakness found;

b. audit, test and train its data security personnel regarding any new or modified procedures and how to respond to a data breach;

c. regularly test its systems for security vulnerabilities, consistent with industry standards; and

d. implement an education and training program for appropriate employees regarding cybersecurity.

227. If an injunction is not issued, Representative Plaintiffs will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Representative Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

228. The hardship to Representative Plaintiffs, if an injunction is not issued, exceeds the hardship to Defendant if an injunction is issued. Representative Plaintiffs will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to use such measures.

229. Issuance of the requested injunction will satisfy the public interest. On the contrary, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Representative Plaintiffs and others whose confidential information would be further compromised.

## RELIEF SOUGHT

**WHEREFORE,** Representative Plaintiffs, on behalf of themselves and each member of the proposed National Class, respectfully request that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

1. That the Court declare, adjudge, and decree that this action is a proper class action and certify each of the proposed classes and/or any other appropriate subclasses under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including the appointment of Representative Plaintiffs' counsel as Class Counsel;

2. For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3. That the Court enjoin Defendant, ordering it to cease and desist from similar unlawful activities;

4. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Representative Plaintiffs' and Class Members' PII and PHI, and from refusing to issue prompt, complete, and accurate disclosures to Representative Plaintiffs and Class Members;

5. For injunctive relief requested by Representative Plaintiffs, including but not limited to injunctive and other equitable relief as is necessary to protect the interests of Representative Plaintiffs and Class Members, including but not limited to an Order:

a. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

b. requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards and federal, state or local laws;

c. requiring Defendant to delete and purge Representative Plaintiffs' and Class Members' PII and PHI unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Representative Plaintiffs and Class Members;

d. requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Representative Plaintiffs' and Class Members' PII and PHI;

e. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

f. prohibiting Defendant from maintaining Representative Plaintiffs' and Class Members' PII and PHI on a cloud-based database;

g. requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

h. requiring Defendant to conduct regular database scanning and securing checks;

i. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII and PHI, as well as protecting the PII and PHI of Representative Plaintiffs and Class Members;

j. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs and systems for protecting personal identifying information;

k. requiring Defendant to implement, maintain, review and revise as necessary a threat management program to monitor Defendant's networks for internal and external threats appropriately, and assess whether monitoring tools are properly configured, tested and updated;

l. requiring Defendant to meaningfully educate all Class Members about the threats they face as a result of the loss of their confidential PII and PHI to third parties, as well as the steps affected individuals must take to protect themselves.

6. For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7. For an award of attorney's fees, costs, and litigation expenses, as allowed by law;

8. For all other Orders, findings and determinations identified and sought in this Complaint.

**JURY DEMAND**

Representative Plaintiffs, individually and on behalf of the Plaintiffs Class(es) and/or Subclass(es), hereby demand a trial by jury for all issues triable by jury.

Dated: November 6, 2025

By: */s/ Philip L. Fraietta*
Philip L. Fraietta, Esq.
**BURSOR & FISHER, P.A.**
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

Daniel Srourian, Esq. (*Admitted Pro Hac Vice*)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverly Hills, California 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

Leigh S. Montgomery*
**ELLZEY, KHERKER, SANFORD, MONTGOMERY, LLP**
lmontgomery@eksm.com
service@eksm.com
4200 Montrose Blvd., Ste. 200
Houston, Texas 77006
Phone: (888) 350-3931

*Counsel for Representative Plaintiffs and the Proposed Class(es)*

**Pro Hac Vice Forthcoming*